THE STATE ex rel. YATES et al. v. CRITTENDEN, County Clerk.

**In Banc, June 29, 1901.**

1. **County Primaries:** CONVENTIONS: DEMOCRATIC PARTY: INTERFERENCE BY STATE COMMITTEE: NOTICE. The supervisory power of the State Central Committee of the Democratic party over the political affairs of the party in the county in relation to nominations for office, is not so plenary and absolute that it may arrogate to itself the right to set aside the action of one or more county conventions, which

claim to have nominated a ticket for the party, without giving such nominees notice and an opportunity to be heard. Before the State committee can so interfere as to set aside the action of a party acting under its local organization, it must first be shown that the local organization has either become disrupted or disorganized and that it is necessary to reorganize it, or it must be shown that the nominations made for a particular election have been procured by fraud or in disregard of the uses and customs of the party, and hence it inevitably follows, that the nominees are entitled to a hearing at a fixed time and place, and to have reasonable notice of such hearing.

2. ———: ———: ———: ———: ———: INTERFERENCE WITHOUT NOTICE: ILLEGAL CONVENTION. Where the State Central Committee has set aside the nominations of a county convention acting under its local organization, without giving notice or a hearing to its nominees before doing so, its action in calling another county convention for the nomination of a county ticket (although done with the view of securing a ticket that all the members of the party may support, and though brought about by a split in the original county convention which resulted in the naming of two tickets each claiming to be regular) is without jurisdiction, and the county clerk should refuse to certify, as the only ticket of the party, the ticket nominated by the convention thus called by the State committee, and should deny to it the right to go on the official ballot as the partys' nominees.

3. ———: ———: ———: ———: ———: MANDAMUS: LEGALITY OF NOMINATIONS CERTIFIED. Where the proceeding is by mandamus to compel the county clerk to recognize and certify to the nominations made by a county convention held in pursuance to the supervisory powers of the State committee, the writ being denied because the committee was without jurisdiction in the matter, the court will not go further and inquire into the legality of other nominations recognized and certified to by the county clerk.

*Held*, by ROBINSON, J., in a separate opinion, that the calling by the regularly constituted county committee of a convention, to be held at a fixed time and place, to nominate a county ticket; the election of the number of delegates appointed to each ward and precinct at the time and places designated by such committee; the making up by such committee of the temporary roll of delegates to such convention in strict accordance with the customs and usages of the party, after hearing evidence from each side as to any contests and no objection to its action in thus

State ex rel. v. Crittenden.

preparing the roll being interposed; the assembling of the convention and its organization by the delegates thus designated; the withdrawal from the hall of 149 of the 419 delegates on the charge that the county committee having in charge the preparation of the roll of delegates had wrongfully and fraudulently decided against contesting delegates; the organization of a separate convention by the 149 withdrawing delegates, and the nomination of a separate ticket by them; the nomination by the remaining delegates in the usual way of another ticket, and the filing of the proper certificate of such nominations in the office of the county clerk; the filing of objections by the other factions to a recognition of this ticket so filed and certified to, and the giving of notice to all parties interested of such objections and the hearing of testimony thereon, and the dismissal of the same—these facts authorized the county clerk to recognize the ticket so filed and certified to as the regular party ticket for the county; and such recognition by him thereof is final, unless an order is made in the matter by the courts, etc.; and neither the State nor any other committee has the right to interfere to keep the nominees so named off of the official ballot, or to have any others substituted in their places.

4. ———: MANDAMUS: PARTIES: IN NAME OF STATE. A suit by mandamus by one set of nominees to compel the county clerk to recognize them as the regularly nominated candidates of the party should be brought in the name of the State on the relation of such nominees.

## Mandamus.

WRIT DENIED.

*Johnson & Lucas, E. Silver, J. C. Williams* and *W. O. Thomas* for relators.

*E. L. Scarritt, Elijah Robinson, I. H. Kinley* and *W. M. Williams* for respondent.

(1)    The State committee is not invested with plenary power to go into a county and set aside, of its own volition, a

State ex rel. v. Crittenden.

nomination made under the auspices of the regular party authorities of such county.    This case is very different from the O'Malley case.    Here there was no dispute that there was a regular county committee.    The party was not disorganized. If the State committee could interfere here, then it may set aside a nomination in any county at will.    We insist that the State committee has no such plenary power to annul and vacate nominations in that manner.    (2)   If, however it be conceded that the State committee had jurisdiction to divest the nominees of the convention called by the county committee of the rights acquired by such nomination, yet, this could not be done until after notice to them and an opportunity to be heard. Ex parte Sanders, 31 S. E. 290.    The record of the State committee shows that it refused to hear any evidence.    Out of the thirty-five or forty candidates, only nine were before the committee, and these nine were permitted to withdraw their names from the agreement to abide the action of the State committee after the other side refused to sign it, and they had no notice or opportunity to further appear in the matter.    Some of the candidates were from the country districts in which there were no contests and about whose nominations no question could possibly have existed.    Yet their nominations were passed upon without notice to them.

GANTT, J.—On the seventeenth day of October, 1900, the relators filed in this court their petition for a writ of mandamus directed to Thomas T. Crittenden, county clerk of Jackson county, Missouri, and commanding him to rescind his decision and ruling wherein he recognized certain parties other than relators as the regular nominees of the Democratic party of Jackson county, Missouri, for legislative and county offices to be filled at the general election thereafter to be held on the sixth day of November, 1900, and to recognize the nominations

for said legislative and county offices certified to him in an amended certificate of nominations signed and acknowledged by Robert E. Ball, as chairman, and Chris J. Carroll, as secretary, of date October 16, 1900, and to cause said nominations as therein set forth to be published as the only legal and regular nominations of the Democratic party in Jackson county for the various offices set forth in said certificate.

The respondent Crittenden at the same time waived the writ and treated the petition as such writ and made his return thereto. To this return the relators filed a reply reasserting the power of the State Central Committee to assume jurisdiction without the consent of the candidates to be affected by its action, and to order and conduct another primary election for delegates to a convention called by it to nominate candidates for the various county offices of Jackson county, and for representatives and senators from said county to the General Assembly of this State.

The relators in their petition stated that the Democratic party is a political party duly organized as such in the State of Missouri, and did cast in Jackson county in said State at the last general election held therein more than three per centum of the entire vote cast in said Jackson county; that on or about August 1, 1900, the Democratic committee of Jackson county, by its order to that effect duly made, did call a convention of delegates (consisting of 419 members) to meet at Independence on August 25, 1900, for the purpose of nominating Democratic candidates for various county offices (including representatives in the General Assembly, members of the State Senate and township and district constables) to be voted for at the general election to be held on the Tuesday following the first Monday in November next thereafter. That said committee did also at the same time apportion the number of delegates to said

Vol 164 mo—16

convention for each ward in Kansas City and for each voting
precinct in Jackson county outside of said Kansas City and did
also appoint Thursday, August 23, 1900, as the time for the
election of delegates to said convention in the various wards
and voting precincts by the Democratic voters therein; that
at the election of said delegates to said convention, so called
as aforesaid, there were two rival factions or competing sec-
tions of the Democratic party, one sometimes known as the
"Reed" faction, and the other as the "Shannon" faction; that
the Reed faction elected the majority of the dele-
gates, said majority consisting of about sixty votes
or thereabouts; that prior to the assembling of the con-
vention, the county committee, a majority of whom were ad-
herents of the Shannon faction, without authority proceeded
to hear evidence and pretended contests as to the right of a
great number of Reed delegates to seats in said convention, and
made up a roll of persons purporting to be elected to said con-
vention, and did place on said roll the names of many persons
of the Shannon faction who were defeated on the face of the
poll by the voters at said election, and thereby gave the Shan-
non faction a majority of forty delegates in said convention;
that the persons claiming to be the delegates and representing
both of the aforesaid factions assembled at the place and time
for the meeting of said county convention, as designated in
the call of the county committee aforesaid; that after the con-
vention had been called to order by the chairman of the county
committee, and before the nomination of any candidates for
office, and before the transaction of any of the regular and or-
dinary business of the convention, the persons present and pur-
porting to be delegates, divided into two rival conventions; that
each section, claiming to be in regular or lawful convention,
organized by the election of a president and secretary; that the
"Shannon" convention, elected James Black, Esq., as its chair-

man, and Albert M. Ott as its secretary, and the "Reed" convention elected James C. Williams as its president and E. S. Villmire as its secretary; that each section appointed its committees on resolutions, credentials and order of business; that each of said conventions thereupon nominated a full county ticket, thus placing before the voters of Jackson county two rival Democratic tickets, for the then ensuing election. That thereafter on September 19, 1900, the Democratic State Central Committee, having been duly convoked at Kansas City, Missouri, and having (after notice to the parties in interest and their appearance before said committee in person or by their representative) considered and investigated the party dissentions and troubles hereinbefore referred to, and for the purpose of adjusting the same, and with a view of effecting the nomination of one county, district and township ticket in the support of which all the Democratic voters at the ensuing election could unite, did call a new Democratic convention to be held at the city of Independence on October 11, 1900, to nominate a Democratic county, district and township ticket, in place of the two hereinbefore mentioned, and said State Central Committee did also at the same time fix Tuesday, October 9, 1900, as the date for and did order on that date the election of delegates (in the various wards of Kansas City, and voting precincts of Jackson county outside of said city) to said convention so to be held at Independence on said October 11, hereinbefore mentioned. That said Democratic State Central Committee (at its said meeting so held at Kansas City aforesaid on September 19, 1900) did authorize the Hon. James M. Seibert, its chairman, to appoint a special committee of said State Committee to supervise said election of delegates to said convention; to select the judges and clerks for the different voting places in said Jackson county, and to take other necessary steps for having a fair and impartial selection of dele-

gates under the direct control and supervision of said Democratic State Central Committee; it being further expressly provided by a resolution of said committee "that all matters of detail, such as the number of delegates, the places of holding the primaries, and all other matters pertaining to said primaries and said county convention" should be left to the judgment of the special committee hereinbefore mentioned. That the Democratic State Central Committee consists of thirty-one members duly selected at the last Democratic State convention held at Kansas City, Missouri, on July 14, 1900, for the nomination of a general State ticket, and for the selection of a State committee. The said State Central Committee after its selection as aforesaid, duly organized by the election of Hon. James M. Seibert as chairman, and J. H. Edwards, Esq., as its secretary, and as such Democratic State Central Committee, it has general superintending and supervisory power and control of the interests of said Democratic party, and of the conduct of its present political campaign in the various counties of the State. That by virtue of its superintending and supervisory power and control, said State committee had full jurisdiction and authority to call the convention to be held at Independence on October 11, next, to direct the election of delegates thereto, and to take the other steps in reference to the election of said delegates and the holding of said convention hereinbefore set out. That said action of said Democratic State Committee in so calling said convention at Independence on October 11, 1900, was also in accordance with usage and custom of said central committee in like or similar cases of party dissentions and complications. That said Democratic State Central Committee had just and reasonable grounds, in view of the local party disruption and disturbances in Jackson county, to interpose its authority and to order said new convention held at Independence on October 11, 1900, and that

the effect of its action in so doing was to vacate and annul the nominations of the alleged convention or conventions held at Independence on August 25, 1900, hereinbefore mentioned. That said State Central Committee only so interfered and ordered said convention of delegates to be held at Independence on October 11, 1900, after full investigation by it of the local party situation and after earnest but unsuccessful efforts on its part to otherwise adjust and harmonize the party dissentions.

That heretofore, to-wit, on September 19, 1900 and after the State Central Committee hereinbefore mentioned, had ordered the holding of the convention at Independence on October 11, next thereafter, and had directed the election of delegates thereto, James Black, Esq., and Albert M. Ott, Esq., purporting to be chairman and secretary, respectively, of the Democratic county convention of Jackson county, aforesaid, but really acting for and representing one of the two alleged conventions held at Independence on August 25, 1900, as hereinbefore indicated, that is to say, the "Shannon" section or division, did file in the office of Thomas T. Crittenden, Esq., the county clerk of Jackson county, Missouri, a document (a certified copy of which is hereto annexed and marked "Exhibit A" and made a part of this petition) purporting to be the certificate of nomination made by a Democratic county convention held at Independence on said August 25, 1900. That your petitioner and others did on September 22, 1900, file in the office of said county clerk objections to said certificate of nominations, said objections being that the nominations set forth in said certificate did not constitute the regular and legal ticket of the Democratic party of Jackson county and that the State Democratic Central Committee, exercising its authority in the premises and in order to adjust the party troubles and dissensions in Jackson county, had intervened and had ordered a new

convention (and the election of delegates hereto) to be held at Independence on October 11, 1900, to nominate a county ticket in place of the two tickets hereinbefore mentioned, one of said tickets, as your petitioners charge and state, being the one set forth in the certificate of nomination filed in the office of said county clerk on September 19, 1900, and hereinbefore referred to. That thereafter and on October 12, 1900, said R. E. Ball and Chris. J. Carroll, as chairman and secretary, respectively, of said convention so held at Independence on October 11, 1900, did execute with the formalities required of conveyances of real estate, their certificate in duplicate of the nomination by said convention held at Independence, on October 11, 1900, aforesaid, of your petitioners, and others, for the various offices to be voted on in Jackson county at the ensuing election, as set forth in said certificates of nominations, and did file the same on the day last aforesaid, in the offices of said county clerk of Jackson county, and of the board of election commissioners of Kansas City, Missouri, a copy of which certificate of nominations is hereto attached, marked "Exhibit B" and made a part of this petition.

That thereafter and on October 15, 1900, objections, signed by Roland Hughes and others, to said certificate last aforesaid, were filed in the offices of the county clerk of Jackson county, and of said board of election commissioners of Kansas City, Missouri.

That thereafter and on October 16, 1901, said Robert E. Ball and Chris. J. Carroll, as chairman and secretary, respectively, of said convention so held at Independence on October 11, 1900, did execute with the formalities required of conveyances of real estate, and did file in the office of said county clerk and of the board of election commissioners of Kansas City, their amended certificates, in duplicate, of the nominations by said convention so held at Independence, October 11, 1900, as

aforesaid of your petitioners and others to the various offices to be voted on in Jackson county at the ensuing election, as set forth in said amended certificate of nominations, the object and purpose of filing said amended certificate of nomination being to correct clerical errors and omissions contained in the original certificates hereinbefore mentioned, which said amended certificate of nominations is hereto attached, marked "Exhibit C," and made a part of this petition. That thereafter and on October 17, 1900, objections were filed by Roland Hughes and others, to said amended certificates of nominations in the offices of said county clerk and of the board of election commissioners of Kansas City, Missouri.

That thereafter and on October 17, 1900, said county clerk did wrongfully overrule the objections made by your petitioners and others to the certificate of nominations, so filed as aforesaid on September 19, 1900, by James Black and Albert Ott, in the office of said county clerk, and said clerk now purposes and intends to cause the nominations set forth in said last-mentioned certificate to be published (purporting to act under Revised Statutes of Missouri of 1899, section 7091) as the legal and regular ticket of the Democratic party to be voted thereon by the voters at the ensuing general election. That thereafter and on October 17, 1900, said Thomas T. Crittenden, county clerk aforesaid, did wrongfully sustain the objections filed by Roland Hughes, and others, on said October 16, 1900, to the said amended certificate of nominations executed by Robert E. Ball and Chris J. Carroll, hereinbefore referred to, and filed in the said office of said county clerk on October 16, 1900, and said county clerk did thereby wrongfully rule and decide that said certificate of nominations last aforesaid was invalid, and that the nominations therein set forth were not entitled to be published under Revised Statutes of Missouri of 1899, as the regular nominees of the Democratic party of Jackson county, Missouri.

That the action of the Democratic State Central Committee in calling (it having full authority in the premises) the convention held at Independence on October 11, 1900, and the nominations made by said convention superseded and rendered nugatory as hereinbefore indicated, the action of and nominations of the alleged convention or conventions held at Independence (under the call of the Democratic county committee) on August 25, 1900, and that your petitioners and others, as the nominees of the convention so held as aforesaid, on October 11, 1900, are the only legal and regular nominees of the Democratic party on its county ticket in said Jackson county, and as such are entitled to be placed on the official ballot to be voted on at the ensuing general election.

That the effect of the aforesaid proceeding of said county clerk in respect to the invalidity of the amended certificate of nominations heretofore mentioned will be, unless relief can be had in this court, to wrongfully deprive your petitioners and other persons therein named of their proper place on the official ballot at the ensuing general election, to their great detriment and injury,—and concluded with a prayer for a writ of mandamus to compel respondent to file and recognize the ticket nominated on October 11, 1900, as the only Democratic county ticket.

The clerk in his return states substantially the same facts that are alleged in the petition down to the election of the delegates to the county convention. He denies the Reed faction elected a majority of the delegates and all the remainder of the petition.

His further return was as follows:

"Respondent for further return to the alternative writ of mandamus herein states that on or about September 19, 1900, James Black and Albert M. Ott, purporting to be the presiding officer and secretary of the regular county convention of the

Democratic party held at Independence on August 25, 1900, duly filed in the office of the county clerk of said county a properly authenticated and acknowledged certificate of nominations of all the candidates nominated by said convention, a certified copy of which certificate of nominations is hereto attached and made part of this return.    That thereafter and on the twenty-second day of September, 1900, W. O. Thomas and others filed in the office of said clerk their objections to said certificate, a certified copy of which objections is hereto attached and made a part of this return; that thereafter and on the second day of October, 1900, your respondent gave due notice to all candidates interested that he would on the sixth day of October hear and consider said objections and pass upon the same; that upon said sixth day of October your respondent was served with a prohibition from this Honorable court prohibiting him from taking any action in this matter until the further order of this court, which application for writ of prohibition was dismissed in this court on the fifteenth day of October, 1900.    That thereafter and upon the seventeenth day of October, 1900, after due notice to all parties interested, and by and with the consent of all the parties interested, your respondent proceeded to hear and determine the validity of said objections so made and filed to said certificate of nominations heretofore filed by the said James Black and Albert M. Ott, chairman and secretary, respectively; that at said hearing all the parties appeared before your respondent and submitted to him the evidence and proofs upon said objections, and from such evidence and proofs your respondent found the facts to be as follows:

"That the Democratic party of Jackson county, Missouri, is and has been for many years an organized and existing political party of and in said county, and as such has always been represented by a duly elected and acting committee designated and known as the Jackson County Democratic Central Com-

mittee, composed of two representatives from each ward and township in said county, except Blue township which has always had four representatives, and that it has been the custom and usage of the Democratic party of Jackson county from time immemorial to vest the power and authority in the Democratic County Central Committee to pass upon the credentials of all delegates applying for seats in the temporary organization of any and every county convention, and to make a roll of such delegates who should be entitled to participate in such temporary organization. And it has been the custom and usage of said Democratic County Central Committee to make up such temporary roll for the purpose of temporary organization from time immemorial, and such has become and is the law and rule of said party in said Jackson county. And it has been the usage, custom and law of said Democratic party of Jackson county from time immemorial to vest in said Democratic County Central Committee the power and authority of nominating the temporary chairman and secretary of any and all county conventions, and said power and authority have been continuously exercised by said committee without objections. That on the thirtieth day of July, 1900, the regularly elected and acting Democratic County Central Committee of said Jackson county, Missouri, duly issued a call for a primary election to be held in Jackson county on August 23, 1900, for the election of delegates to a convention to be held at Independence, Missouri, on August 25, 1900, and duly apportioned the delegates to be elected at said primary to the representative wards and precincts in said county; and that at the same time it was unanimously resolved by said committee that in case of any disagreement or contest between delegates to said convention, said disagreements and contests should be submitted to a returning board composed of Andrew Gallagher and Pendergast and some third person to be selected by those two, and upon their failure

to agree upon said third person such disagreements or contests should be submitted to and determined by the Democratic County Central Committee; that in pursuance thereof the said primary election was duly held on the twenty-third day of August, 1900, at which election four hundred and nineteen delegates were elected; that out of the election there arose contests between the delegates in the Third, Fourth, Fifth, Eighth and Tenth wards in Kansas City, Jackson county, Missouri (in none of which wards did all the judges and clerks sign the returns), and the said Gallagher and Pendergast being unable to mutually settle the said contests and being unable to agree upon a third person to act with them, so reported to the Democratic County Central Committee, which was duly assembled pursuant to its adjournment at Independence, Missouri, all the members thereof being present either in person or by proxy. And thereupon the contesting delegates in each of said wards appeared before said committee and submitted evidence and arguments upon the disputed questions involved in their respective contests, and said committee after hearing said evidence and arguments decided such contests and made up and provided a roll of delegates for the temporary organization, only, of said convention. That the said Democratic County Central Committee at the same time nominated James Black, Esq., as temporary chairman of said convention, and Albert M. Ott, Esq., as temporary secretary thereof, which nominations were unanimously approved by all the members of said committee; that thereafter said convention was called to order by the chairman of the Democratic County Central Committee, the Hon. Frank P. Sebree, who required the secretary to call the roll of delegates which had been prepared by the Democratic County Central Committee as being entitled to participate in said temporary organization, and the said Sebree as such chairman then announced the nomination by said committee of Mr. Black as temporary chairman.

"Respondent further found from such proofs and testimony that James Pendergast, who was a member of said committee by proxy, and who was present and voted upon all the proceedings thereof, nominated J. C. Williams as temporary chairman of said convention; whereupon the chairman instructed the secretary to call the roll for the convention to decide between said nominees; whereupon Mr. Pendergast withdrew the nomination of Mr. Williams as temporary chairman, and there being but one nomination before the convention—that of Mr. Black—the question was put before the convention and carried and he was declared the temporary chairman of the convention; and that Mr. Albert M. Ott was elected temporary secretary of the convention in the same manner. Respondent further found from said proofs and testimony, that after this time, about one hundred and forty-nine of the delegates withdrew from the convention to another part of the premises, and that the convention presided over by Mr. Black proceeded to organize with the selection of committees on credentials, on rules and order of business, and on resolutions, and that the committee on credentials reported the list of delegates entitled to seats in the permanent organization of the convention, which was approved by a vote of the convention, and that the committee on permanent organization reported the selection of Mr. Black and Mr. Ott as permanent chairman and secretary, respectively, which was approved by the convention; that the convention then proceeded in the ordinary and usual way, by vote of the delegates, to nominate a ticket, and in such manner it nominated the ticket against which these objections were filed as aforesaid. Your respondent further found from the proofs and evidence aforesaid, that said convention so presided over by said Black, and which nominated said ticket, was held at the time and place designated in the said call of the regularly constituted party authorities, and it was the last regular convention of the said

party regularly called.   Your respondent alleges that the facts so found by him are true, and that by reason thereof the nominations so made by said convention constitute the regular Democratic nominees of the Jackson county Democracy, and are entitled as such to be placed upon the Democratic ballot at the coming election, and entitled exclusively to the name or caption of the Democratic party, and by reason whereof the objections heretofore filed by said W. O. Thomas and others to said certificate of nominations are invalid and of no effect and are overruled.

"For a further return to the alternative writ herein, your respondent states that heretofore, to-wit, on the twelfth day of October, 1900, R. E. Ball, Esq., and C. J. Carroll, Esq., purporting to be the chairman and secretary, respectively, of a Democratic county convention held at Independence, Missouri, on October 11, 1900, filed with your respondent a certificate of the nomination of said convention; that thereafter and on the fifteenth day of October, 1900, George O. Gross, Roland Hughes and others duly filed objections thereto; that thereafter and on the seventeenth day of October, 1900, after due notice had been given and with the consent of all the parties interested, the said objections to said last-named certificate of nominations were taken up and heard by your respondent, and from the proofs and testimony thereupon adduced your respondent found that on September 19, 1900, the Democratic State Central Committee convened in said Kansas City, Missouri, and resolved to call a primary election in all the voting precincts in Kansas City and Jackson county to elect delegates to a convention to be held at Independence on October 11, 1900, for the purpose of nominating county, township and district officers and the Democratic County Central Committee to be composed of one member from each ward and township. Your respondent further found from said proofs and testimony

that said Democratic State Central Committee gave no notice whatever to any of the interested parties of their intention to pass such resolution and that no opportunity to be heard before said committee was given to any of the interested parties, and that no testimony was taken by said committee upon the questions of dispute and no hearing of any evidence whatever was had by said committee. Your respondent further found that said committee refused to hear any evidence or take any testimony upon any of the questions involved in any controversy between those claiming to be candidates (said resolution of said State Central Committee is hereto attached and made a part hereof). Your respondent further found from such proofs and testimony that the subcommittee mentioned in said resolution proceeded to hold a primary in each ward and township in the said city and in said county, and did not hold a primary in each voting precinct thereof, and that there are about twenty-three wards and townships in said county, and one hundred and sixty-five voting precincts therein, and that said subcommittee assessed the delegates to said convention for the cost and expense of said primary, and that they did not assess the candidates therefor.

"Your respondent further found from said proofs and testimony that none of the nominees upon the ticket theretofore filed in your respondent's office on the nineteenth day of September, 1900, by James Black and Albert M. Ott appeared before said committee or participated in said primaries, and that less than twenty per cent of the Democratic voters of Jackson county, Missouri, participated in said primaries. Your respondent further found from said proofs and testimony that the convention held in pursuance of said primaries on the eleventh day of October, 1900, and presided over by R. E. Ball, Esq., as chairman, and C. J. Carroll, Esq., as secretary, made the nominations mentioned in the certificate signed by

them, and heretofore filed with your respondent on the twelfth day of October, aforesaid.  Your respondent further found from said proofs and testimony that the ticket so nominated was irregular, unusual and contrary to the custom and usage of the party, and was not nominated by the regularly constituted party authorities, nor by a convention held at the time and place designated in the call by said party authorities, nor by the last regular convention of said party regularly called.  Your respondent further found from such proofs and testimony that a certificate of nominations of a regular convention held at the time and place designated in the call of the regularly constituted party authorities had been filed in the office of your respondent on the nineteenth day of September, 1900; that said ticket had been adjudged the regular Democratic ticket and entitled to be designated as the Democratic ticket and placed upon the official Democratic ballot.

"Respondent alleges that the facts so found by him are true, and that said objections filed as aforesaid by George P. Gross, Roland Hughes and others are valid and must be sustained, and that the nominees mentioned in the certificate filed as aforesaid by the said R. E. Ball and C. J. Carroll are not entitled to be placed upon the regular Democratic ballot nor entitled to use the name 'Democratic.'  Whereupon, your respondent overruled the objections filed as aforesaid by W. O. Thomas and others to the certificates of nominations filed as aforesaid by James Black and Albert M. Ott, and thereafter sustained the objections filed by George P. Gross and Roland Hughes and others to the certificates of nominations filed as aforesaid by R. E. Ball and C. J. Carroll.  Having fully made return of all the matters and things within the cognizance of your respondent pertaining to the matters set forth in the writ herein, your respondent prays the judgment of this honorable court thereon, to the end that his action and judgment herein

be sustained and approved by the court."

Upon the issues thus made the parties offered evidence of the call of the county convention; the certificate of James Black as chairman and Albert M. Ott as secretary of the nominations made by the county convention, August 23, 1900, in regular form.

The minutes of the State Central Democratic Committee, held at Kansas City, Tuesday, September 18, 1900, at which meeting all of said committee were present except Mr. Hiett of the Thirteenth district and Mr. Barbee of the Fifteenth, who was represented by Hon. Hugh Dabbs as proxy, were offered and read, from which it appeared that the committee had prepared an agreement to be submitted to the respective candidates and nominees of the two rival factions for their signatures. Said agreement was as follows:

"We the undersigned candidates and representatives of the two factions of the Democratic party, selected on the date of the county convention called to have been held on the — day of —, 1900, hereby agree that the Democratic State Central Committee shall take entire and exclusive charge of any and all controversies that may exist between us—may determine the legality of one or the other tickets named on said day and certify the same to the board of election commissioners and the county clerk, or take such further action as said State Central Committee may decide upon.

"And it is further agreed that the Democratic State Central Committee shall, in the event it may deem best and proper, take and select from the two tickets named on the aforesaid day, one ticket, which said ticket when so made, shall be ratified by the delegates to both of the conventions held on said date last aforesaid, and shall be by them and their duly constituted chairman and secretary duly certified to the board of election commissioners of Kansas City and the county clerk of Jackson

State ex rel. v. Crittenden.

county, Missouri, to be by them certified and placed upon the official ballot under the caption 'Regular Democratic Ticket,' together with the state and judicial tickets heretofore named, or such further action as the said State Central Committee may decide upon.

"And that each and all of us, both for ourselves and for the factions by us represented, pledge to the Democratic State Central Committee our active and sincere support of the ticket so made up by the Democratic State Central Committee or their action in the premises, and we and each of us, for ourselves and for the factions represented by us, do pledge the Democratic State Central Committee that the name of no candidate upon either of the respective tickets heretofore named, which shall not be put upon the ticket made up by or in pursuance of the orders of the Democratic State Central Committee, shall be placed upon any ballot to be voted for at such general election on November 6, 1900."

The secretary was directed to notify the nominees on the respective tickets to appear at 1:30 p. m. of that day.

It further appeared that nine of the nominees of the so-called "Shannon" faction appeared and signed said agreement; there was no evidence that the other nominees were notified. No nominee of the "Reed" faction signed said agreement. On the next day the nominees who had signed the agreement came forward and filed the following withdrawal of their consent:

"Kansas City, Mo., September 19, 1900.
"To the Democratic State Central Committee of Missouri:
"Gentlemen:—Inasmuch as the agreement prepared by your committee has not been signed by all of the candidates affected thereby we hereby unqualifiedly withdraw our consent to said agreement."

Vol 164 mo—17

Signed by the nine nominees who had signed the agreement, and thereupon, upon motion, their names were stricken from the agreement.

.    It was moved that the respective factions be given a reasonable time to present their testimony and evidence, but this resolution was lost by a vote of nine ayes and nineteen noes.

The following resolution was then amended by inserting a clause to the effect that the delegates be elected at a primary election to a convention to be held at Independence, October 11, 1900, and then adopted:

"The Democratic State Central Committee, having made impartial investigation of the claims of both factions in Kansas City and Jackson county to the legality of the respective tickets named by them on the — day of —, 1900, hereby asserts its conviction and judgment that neither ticket was legally nominated, and that neither ticket can be legally placed upon the official ballot in November. And it being impossible to secure any adjustment or settlement of the differences between the two warring factions;

"Be it resolved by the Democratic State Central Committee that a primary election, for the purpose of electing delegates to a county convention to be held at Independence on Thursday, October 11, is hereby called and directed to be held on Tuesday, October 9, 1900, in all the voting precincts in Kansas City and Jackson county, between the hours of nine in the forenoon and eight in the afternoon, for the nomination of candidates for ..... for the nomination of a candidate for State senator from the —— district, and for the nomination of a candidate for State senator from the —— district, and in each of the legislative districts in said Kansas City and Jackson county; and also for the election of members of a new county central committee, to consist of one member from each ward in Kansas City and

·one from each township in Jackson county, outside of Kansas City.

"And be it further resolved, that each faction is requested, within the next five days, to submit to the chairman of the Democratic State Central Committee, a list of judges and clerks to represent such faction at the said primary—the State Central committee reserving the right to select all or any from such list so furnished as judges and clerks, as its judgment and discretion may direct.

"Be it further resolved, that a special committee of — members of the Democratic State Central Committee shall be selected and designated by the chairman of the Democratic State Central Committee, to have the entire and exclusive supervision and control of said primary election and its conduct.

"And be it further resolved, that the Democratic State Central Committee shall place in each voting precinct at said primary in Kansas City and Jackson county, a representative of the Democratic State Central Committee, from the State outside of Kansas City and Jackson county, to observe the conduct of said primary and to report in writing to the Democratic State Central Committee, or to its chairman for the use of the committee, the manner in which such primary is conducted at such precinct.

"Be it further resolved, that the Democratic State Central Committee shall, to the exclusion of all other persons, compare and count the vote at said primary cast, and determine the result of said primary.

"Be it further resolved, that the special committee above provided for, shall have power and authority, in the vacation of said Democratic State Central Committee, to take such action and perform such services and make such rules and regulations as shall to them seem just and proper for the governing of said primary, to the end that impartiality and fairness shall obtain

and the vote of every Democrat in Kansas City and Jackson county may be fairly expressed and honestly counted.

"Be it further resolved, that the board of election commissioners and the county clerk of Jackson county are requested to furnish the Democratic State Central Committee, for its use in the conduct of said primary, all books, papers, tally-sheets, ballotboxes, poll-books, booths, and such other information, matter and things as may be necessarily used in the conduct of said primary election.

"Be it resolved further, that the following assessments are hereby made against the candidates for the respective offices, for the purpose of defraying the expenses of said primary, which assessments shall be paid five days prior to the day of said primary to Thomas J. Ward, treasurer of said Democratic State Central Committee, or his accredited representative, as follows: . . . . . ."

It was further shown by the evidence that the primary was held as directed and a convention composed of the delegates thus chosen met at Independence, October 11, 1900, and nominated a ticket, and that the chairman and secretary thereof presented the same to the county clerk, respondent herein, and demanded that he recognize this ticket and certify the same as the only regular Democratic ticket for county offices for the election to be held November 6, 1900. That objections were duly filed thereto and after hearing the evidence he refused to so recognize said nominations or to place them on the official ballot, and, hence, these proceedings by the relators.

This court upon the hearing denied the writ of mandamus, but owing to the necessity for an immediate ruling the opinion was not then handed down.

I. From the recital of the foregoing facts it is at once apparent that relators' claim to recognition as the only regular Democratic nominees of the Jackson county Democracy rests

upon the legality of the action of the Democratic State Central Committee in setting aside the nominations of the county convention held at Independence on the twenty-third day of August, 1900, and taking charge of and conducting the primaries at which the delegates to the convention held at Independence on October 11, 1900, were chosen. The nature of the remedy sought, a writ of mandamus, indicates that the action of the State Central Committee conferred a clear legal right upon relators and devolved upon the county clerk, the respondent herein, the plain legal duty of recognizing the right of relators to have their names certified for the official ballot.

Conceding that the State Central Committee, under our political system, had a supervisory power over the political affairs of the county so far as it relates to nominations for county officers and that in the given case it deemed it necessary to interfere, it can not be maintained that this power is plenary and so absolute that it may arrogate to itself the right to set aside the action of a county convention and ignore the rights of its nominees without giving such nominees notice and an opportunity to be heard. Such an assumption would be in plain violation of all precedents and the party usage of the Democratic party since its organization.

The right of the people to select their own public servants is an inherent principle of Democracy, and before a committee organized for the efficient management of party affairs of the State at large can set aside the action of a party acting under its own local government, it must first be shown that the local organization has either become disrupted and disorganized, and it is necessary to reorganize it, or that the nominations made for a particular election have been procured by fraud or in disregard of the usages and customs of the party, and it inevitably follows that the nominees of the local organizations whose nominations are to be set aside shall be accorded a hearing and a time

and place fixed for that hearing, of which they shall have reasonable notice and an opportunity to present their evidence.

These principles are fundamental, and yet the record of the State Central Committee on its face shows not only that such a hearing was not had but by a decisive vote was denied. Moreover, it appears that only nine out of some thirty-five local nominees had any notice of the meeting of the State Central Committee, and it further appears that they were simply notified to appear and signify their assent to the agreement prepared by the State Central Committee and they gave their assent upon the understanding that all the nominees of both factions should assent thereto, and when on the next day they learned that the nominees of the rival faction refused to sign said agreement, they unqualifiedly withdrew their assent to said agreement.

Having given their assent upon a condition which was repudiated by their opponents, the action of the committee can not be upheld upon the principle that they waived notice of the subsequent action of the committee of which they had no notice, and hence the action of the State committee can not be sustained upon the ruling in O'Malley v. Lesueur, 103 Mo. 253. It follows from what we have said that the action of the State committee in calling another convention, to-wit, the one held on October 11, 1900, at Independence and at which relators were nominated, was wholly without jurisdiction, and contrary to party usage and the county clerk properly refused to recognize the ticket nominated by that convention as the only Democratic county ticket for the ensuing election, and the relators have shown no right to a peremptory writ of mandamus against him.

As the sole object of this proceeding is to compel a recognition of relators and their associates nominated by the convention held at Independence on October 11, 1900, as the sole and

only Democratic nominees for the county and legislative offices of Jackson county, and as we hold for the reasons already assigned that the county clerk properly refused to recognize the right of the State Central Committee to interfere in the local affairs of the Democratic party without first having given notice and ascertained from the evidence the propriety of so doing, and to recognize the nominations made under its auspices under the circumstances, it is neither essential nor proper under the pleadings to go further and inquire into the legality of the nominations that were recognized and certified by the county clerk. The relators base their claim to recognition as candidates and nominees upon the action of the State Central Committee and seek the *specific relief* of being certified by the clerk as the only regular Democratic county nominees and as this must be denied it is sufficient to deny the writ as prayed by them.

Writ denied. *Burgess, C. J., Brace* and *Valliant, JJ.,* concur.

## SEPARATE OPINION.

ROBINSON, J.—This is a proceeding by mandamus instituted against Thomas T. Crittenden, as county clerk of Jackson county, to require him to reverse his action in the matter of sustaining the validity of a certificate of nomination filed in his office on September 19, 1900, and to recognize the validity of a second certificate of nomination filed with him as county clerk on the twelfth day of October, 1900, purporting to emanate from the same political authority as the first, and to cause the names of the persons named in the second certificate to be published as the regular nominees of the Democratic party of Jackson county, as contemplated by section 7091, Revised Statutes 1899, for the various county offices to

be voted for at the general election on November 6, 1900.   By this proceeding it is sought to have determined a question of difference, and to settle a question of precedence between two rival factions of the Democratic party of Jackson county.  The following, in brief, are the circumstances which gave rise to the present litigation between the parties to this record.   On July 30, 1900, the regularly constituted county committee of the Democratic party of Jackson county called a convention to be held on the twenty-fifth day of August of that year at the city of Independence, in said county, to nominate a county ticket to be voted for at the ensuing election in November; and at the same time the committee apportioned the number of delegates to said convention for each of the wards in Kansas City, and for each voting precinct in Jackson county outside of Kansas City, and named Tuesday, August 23, 1900, as the time for the election of delegates to said convention.  The temporary roll of delegates to such county convention was made up by the county committee in strict accordance with the custom and usages of the party of Jackson county, and, by express agreement that this should be done, each side or faction of the party, when there was a contest between delegates claiming to have been chosen at the primaries on the twenty-third, presented evidence to the county committee upon the disputed questions involved in their respective contests, and no objection whatever was made or interposed to the action of the committee in thus preparing the roll of those entitled to participate in the temporary organization of the convention.   The convention having assembled, it was organized by the delegates thus designated, with James Black as chairman, and Albert Ott as secretary.  At this juncture 149 of the 419 delegates thus selected, and constituting the roll of delegates entitled to seats in said county convention, withdrew from the hall where said convention had assmbled to another part of the premises, charging that the county com-

mittee having in hand the matter of determining the roll of delegates entitled to seats in the convention had wrongfully and fraudulently decided against contesting delegations chosen from various wards of Kansas City, representing their faction of the party, and in favor of those representing the opposing faction, organized a convention of their own, and proceeded to name and nominate a full county ticket, which said nomination and ticket was afterwards, however, abandoned; and the remaining delegates of the convention, presided over by James Black, with Albert Ott as secretary, proceeded in the ordinary and usual way, by vote of the remaining delegates present, to nominate a ticket, and a proper certificate of said nomination was duly filed in the office of said respondent county clerk on September 19, 1900, and this ticket was afterwards recognized by the respondent county clerk as the regular Democratic ticket of Jackson county. That this ticket was regularly nominated by a convention held at the time and place designated in the call of the regularly constituted party authorities can not, under the evidence in the case, be doubted. This fact alone would seem to settle the matter in favor of respondent's contention and position, because section 7089, Revised Statutes 1899, makes exact provision for a case of this character. It provides that "all certificates of nomination which are in apparent conformity with the provision of sections 7088 and 7089 shall be deemed valid unless objection thereto shall be duly made, in writing, within three days after the filing of same;" and, further, "the Secretary of State or county clerk shall give the preference of name to the convention held at the time and place designated in the call of the regularly constituted party authorities;" and, again, "the action of the preceding regular convention of each party regularly called shall determine the action of the Secretary of State, the county clerk or the court in its decision." The respondent complied strictly with the

provisions of section 7089, and when objections were made by W. O. Thomas and others, representing what is designated in these proceedings as the "Police" or "Reed" faction, to the certificate theretofore filed with him, as county clerk, by James Black and Albert Ott, on behalf of the nominees of the convention of August 25, at Independence, and to the use of the party name by said convention and nominees, he caused notice to be mailed to all interested parties, heard testimony upon the questions involved, and found the objections to be invalid and without merit, and dismissed same; and his decision upon that question is by statute made final, "unless an order shall be made in the matter by the Supreme Court, or a circuit court, or by a judge of such court in vacation before the date for the certification of the names of nominees by the Secretary of State to the county clerk, or before the time at which the county clerk is required by law to publish the names of the nominees as certified to by him." By passing upon the invalidity of the objection to the certificates first filed, and holding the objection without merit and invalid, the county clerk necessarily, and by the same mental process, held the first-filed certificate valid.

Under the statute, there was no escape from such conclusion, and there was no other course to pursue. If the nominations made by the convention of August 25 under the call of the regularly constituted county committee were regular in the meaning of the statute, then the nominees whose names appeared in the certificate filed with the respondent county clerk had the legal right to have their names go upon the official ballot as such; and they can not, under the statute, be deprived of that right by any political committee on the mere grounds of party expediency. Once regularly nominated, the candidates have the legal right to their place upon the ticket of their party, by the express terms of the statute; and all questions as to such right must be determined in the first in-

stance by the tribunal fixed by law, to-wit, the county clerk, and his decision should be final, unless an order shall be made in the matter by the Supreme Court, or a circuit court, or a judge of such court in vacation, before the date for the certification of the names of nominees; and the same rule that governs the decision of the clerk must also control that of the court. The statute provides the test by which the right must be determined by either the clerk or the court, if the court is called upon to act in the premises. It reads, "The action of the preceding regular convention of such party regularly called shall determine the action of the Secretary of State, the county clerk or the court in its decision."

It seems quite needless to inquire further in order to give our affirmative approval and sanction to the action of the respondent, as county clerk, in this regard. But, not stopping at this, respondent went still further, and when, on October 12, 1900, R. E. Ball and C. J. Carroll, purporting to be chairman and secretary of a Democratic county convention held at Independence on October 11, 1900, under the auspices of the Democratic State Central Committee, filed with him, as county clerk, a certificate of the nomination of such convention, and objections were filed thereto by Roland Hughes and others, nominees of the first convention, the respondent pursued a course similar to the one already indicated and thereupon found the objection valid, and such finding was also final under the statute above mentioned; and respondent also found and held that the nominees named in the last or second certificate were not entitled to place on the regular Democratic ballot, nor entitled to use the name, "Democratic," and this course also is within the provisions of the sections of the statute, supra. That section says: "The county clerk shall give the preference of name to the convention held at the time and place designated in the call of the regularly constituted party authorities."

The ruling and decision of the county clerk, made upon the validity of the first certificate, of necessity caused him to rule and decide as he did on the second certificate. He could not have done otherwise. There could not be two valid certificates both emanating from the same party source and both bearing the same party name.

Relative to the action of the Democratic State Central Committee in calling a primary election to elect delegates to another convention to be held at Independence on the eleventh of October, 1900, it is unnecessary to pass upon its jurisdiction to act in the premises, not only because of reasons already given, but for the further reason, if the State Central Committee had such general jurisdiction, such jurisdiction never attached by reason of the fact of want of notice given to *all* parties interested adversely to such proposed primary convention. [Ex parte Sanders, 31 S. E. 290.] And as to those adversely interested (the nominees of the convention of August 25) though few in number, who voluntarily appeared before the State Central Committee, to discuss the authority and propriety of said State Central Committee acting in the premises, they afterwards with the consent of such committee, withdrew their appearance, which withdrawal caused any supposed jurisdiction which may have theretofore attached to be lost. [Gage v. Gates, 62 Mo. 412.] A notice of some kind must be served upon all the parties whose interests are to be affected by the action of the tribunal, whatever its character, proposing to act by lawful authority in the premises; otherwise its action or adjudication must be held, as to such parties, a mere nullity.

Moreover, the facts above related, as well as the statutory provisions above quoted, show that relators have no standing in court; no interest in the subject-matter of the present litigation, and consequently no rights or authority to inquire into the official acts and doings of respondent.

The intent, purport and purpose of this opinion is to declare that when all the proceedings have been as regularly conducted as hereinbefore recited and set forth, that then the regularly constituted county authorities are supreme within their prescribed limits and sphere of action; and their acts thus done can not be successfully questioned from any source or in any quarter.

In conclusion we remark that this suit ought to have been brought in the name of the State on the relation of petitioners. [Bliss on Code Pleading (3 Ed.), sec. 443; Cloud v. Inhabitants Pierce City, 86 Mo. loc. cit. 371.] For the reasons given, the peremptory writ should be denied. *Sherwood* and *Marshall, JJ.*, concur.

In explanation of why the foregoing opinion, written by myself, is filed, when it in no sense expresses a dissenting view to, or asserts a proposition at variance with that expressed in the opinion now filed as the majority opinion of the court, I desire to say that my opinion was written when the case came to my hands under its first regular order of assignment; that shortly afterwards it was duly read to the court, but failed to secure sufficient concurrence to become the opinion of the court, although in what respect it was wrong the writer has never been informed. As the rejection of an opinion written under a regular order of assignment, and the adoption of another written afterwards, upon its face asserting the same propositions and declaring the same result, is so unnecessary and unusual, I do not wish to be placed in the attitude of endorsing the practice by a simple concurrence in the majority opinion as filed, but wish to express my concurrence therein, by filing the opinion written by myself, in which the majority of the court do not concur.